IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDDIE CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, *et al.*,<br><br>    Defendants. | Civil Action: ABA-24-0525 |

**MEMORANDUM OPINION**

Plaintiff Eddie Carter, through counsel, filed a civil rights complaint pursuant to 28 U.S.C. § 1983. ECF No. 1. Carter alleges that on March 1, 2019, he was assaulted at Jessup Correctional Institution ("JCI") by Corrections Officers. *Id.* He brings both federal constitutional and state law claims against the Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"), Sergeant John Wanjohi, Officer Peter Foncha Nkem, Officer Kehinde Arowoile, Officer Gerald Lane, and Sergeant Collins Sunni. *Id.* Carter seeks damages and injunctive relief in the nature of training and protocols. *Id.* at 8. On December 11, 2023, Carter's attorney was granted permission to withdraw as counsel and Carter is self-represented at this time. ECF No. 23.

Defendants DPSCS, Sergeant Wanjohi, Officer Nkem, and Sergeant Sunni have moved to dismiss or for summary judgment ("Defendants' motion"). ECF No. 32. Service has not yet been effectuated on Defendant Officers Arowoile and Lane and they have not appeared in this action.

Carter was directed to file a limited response to Defendants' motion addressing solely the statute of limitations and laches arguments, ECF No. 38, has filed a limited

response to the motion,[1] ECF No. 43-1, and the Defendants replied. ECF Nos. 41-43. The Court has considered the parties' briefs and evidence attached thereto and finds that no hearing is necessary. Loc. R. 105.6.

For the reasons that follow, Carter's federal claims are barred by the statute of limitations, and the Defendants' motion, construed as a motion for summary judgment, is granted on this ground as to the federal claims. Further, Carter's state law claims will be dismissed without prejudice.

## I. BACKGROUND

At the pleadings stage, the Court "must accept as true all of the factual allegations" in Plaintiff's operative complaint (ECF No. 43-1) and "draw all reasonable inferences in [his] favor." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Accordingly, with respect to the claims as to which the Court considers (and grants, as explained below) Defendants' motion to dismiss, the Court applies that standard. Insofar as Defendants have moved for summary judgment and the Court decides Plaintiff's federal claims on that basis, the Court recites the facts in the light most favorable to Plaintiff. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

### A. Carter's Allegations

Mr. Carter alleges as follows. On March 1, 2019, Carter entered the recreation room at JCI to make a telephone call. ECF No. 1 at 3. Carter saw another inmate who was

---

[1] Carter's response appeared to be incomplete, ECF No. 39, and he was given an opportunity to file an amended limited response. ECF No. 40. The Court did not receive the amended limited response from Carter, but Defendants' counsel did receive a copy from Carter, and on July 10, 2025, counsel filed Carter's amended limited response with the court. ECF Nos. 43, 43-1. The Court will consider the amended limited response the operative pleading in this matter. ECF No. 43-1.

bleeding from his head and began to assist him to stop the bleeding. *Id.* at 3-4. Officer Arowoile saw Carter assisting the other inmate and proceeded to place Carter in rear handcuffs. *Id.* at 4. Although the other inmate advised Arowoile that Carter was only trying to assist him, Arowoile called for more officers. *Id.* When the other officers arrived, Carter was escorted to the front of the tier, still in handcuffs. *Id.* Officer Wanjohi arrived and, although he knew that Carter had done nothing wrong, he allowed Carter to be assaulted. *Id.* at 5. Officer Nkem[2] pushed Carter up against a window with his face, chest, and shoulders "rammed" into the glass. *Id.* Officers Wanjohi and Nkem then forced Carter to the ground. *Id.* Officer Lane escorted Carter to another building and, while on the way, struck Carter in the back with his elbow and in the head with his fist. *Id.* Lane handed Carter off to Officer Sunni, who then dragged him past the medical room to the property room and threw him on a bench. *Id.* Officer Nkem told Carter that if he kept crying, he would take him to the bullpen and "beat his ass some more." *Id.* at 6. Carter was later taken to the medical unit and put in "isolation" based on false information from the officers. *Id.*

**B. Defendants' Response**

As the parties were advised, at this juncture, the Court will address only Defendants' statute of limitations and laches arguments. ECF No. 38. To establish the dates relevant to computing the accrual date and otherwise determining whether these defenses apply, Defendants included the declaration of Britt Brengle (ECF No. 32-3 at 1-

---

[2] Carter alleges in his complaint that this Defendant's name was Officer Peter Fuschia, but Defendants' counsel corrected the name to Officer Peter Foncha Nkem, ECF No. 32 at 1, and the docket was corrected accordingly. ECF No. 38 at 1 n.1.

2), the DPSCS record custodian for the Intelligence and Investigative Division ("IID") and IID records (ECF No. 32-3 at 3-185) and Carter's grievance records (ECF No. 32-5).

Brengle states that on March 1, 2019, an IID investigation was opened following the use-of-force incident that took place on that date. ECF 32-3 at 1 ¶ 3. On March 4, 2019, Carter was moved to administrative segregation and then returned to general population on March 21, 2019 after a favorable termination of disciplinary proceedings brought against him. *Id.* at 163-164.

On March 23, 2019, Carter filed a Request for Administrative Remedy ("ARP") pertaining to the March 1, 2019 incidents and subsequent disciplinary proceedings. ECF No. 32-5 at 9-11. On April 26, 2019, the Warden procedurally dismissed it due to the pending IID investigation. *Id.* at 5. On May 22, 2019, Carter appealed the Warden's decision to the Commissioner of Correction at DPSCS Headquarters. *Id.* at 6. On May 30, 2019, the appeal was also procedurally dismissed due to the pending investigation by IID. *Id.* Carter appealed the dismissal to the Inmate Grievance Office ("IGO"). *Id.* at 3-4. Carter's appeal is dated June 23, 2019 but it is stamped as received by the IGO on October 18, 2019. *Id.* at 3. On November 20, 2019, IGO Deputy Director Robin Woolford issued an administrative dismissal of Carter's grievance, because the matter was still pending investigation by the IID. *Id.* at 12. Carter was advised that his ARP appeal was dismissed "without prejudice and may be administratively reopened in the event that you disagree with the findings of the IID investigation." *Id.*

The IID investigation was subsequently closed on December 30, 2019. ECF No. 32-3 at 2, ¶ 6. Carter, through his then-attorney Bert Kapinus, made two requests through the Maryland Public Information Act for information on the IID investigation. *Id.* ¶ 7. On the first request, Kapinus was advised that the investigation was still pending and in

4

response to the second request, on May 11, 2020, a redacted copy of the closed IID report was emailed to Kapinus. *Id.*

Carter did not appeal the IGO's dismissal without prejudice. ECF No. 32-5 at 1 (Maryland Judiciary Case Search results showing no administrative appeal cases filed by an Eddie Carter between March 1, 2019, and February 21, 2024).

## II.    STANDARD OF REVIEW

Defendants moved to dismiss the complaint for failure to state a claim or alternatively for summary judgment. As discussed, Defendants filed documents to establish the dates necessary to assert the statute of limitations and laches defenses. ECF Nos. 32-3; 32-5.

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). When the parties are present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court sent Carter notice advising him that Defendants' motion could be construed as one for summary judgment and result in the entry of judgment against him. ECF Nos. 34, 38. In addition, the Defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Carter to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash.*

5

*Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Carter has responded to Defendants' motion, ECF Nos. 39, 43-1. The Court will resolve the statute of limitations and laches defenses under Rule 56.

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party satisfies this burden, then the Court will award summary judgment unless the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.   DISCUSSION

**A.  Federal Claims**

Defendants assert the affirmative defense that Carter's complaint is barred by the statute of limitations. ECF No. 32 at 1; ECF No. 32-1 at 14-16. "Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). In Maryland, unless otherwise provided in a different provision of the Maryland Code, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts & Jud. Proc. Code § 5-101. The three year statute of limitations therefore applies to Carter's federal civil rights claims.

The question of when a cause of action has accrued under 42 U.S.C. § 1983 is a question of federal law. *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*.

The Court reviews the facts to determine the applicable dates. The parties agree that the use-of-force incident took place on March 1, 2019. ECF No. 1 at 6; ECF 32-3 at 1, ¶ 3. On March 4, 2019, Carter was moved to administrative segregation and then returned to general population on March 21, 2019 after a favorable termination of disciplinary proceedings brought against him. *Id*. at 163-164. Carter's complaint was filed by counsel on February 21, 2024, nearly five years after the incident itself took place and Carter was

7

released from administrative segregation. The filing date was well beyond the three-year statute of limitations.

The Court, however, must allow for equitable tolling of the statute of limitations during the time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019). A review of the relevant dates does not result in a finding in Carter's favor.

Carter initiated exhaustion of administrative remedies on March 23, 2019 by filing his ARP. ECF No. 32-5 at 9. He continued through the administrative process and on November 20, 2019, the IGO dismissed Carter's appeal because the matter was still pending investigation by the IID. *Id.* at 12. Carter was advised that his ARP appeal was dismissed "without prejudice and may be administratively reopened in the event that you disagree with the findings of the IID investigation." *Id.* The IID investigation was then closed on December 30, 2019. ECF No. 32-3 at 2 ¶ 6. Carter, through counsel, requested the IID report from DPSCS and was emailed a redacted copy on May 11, 2020. *Id.* ¶ 7. The record does not indicate that Carter requested to reopen his administrative remedies case with the IGO, or filed a judicial appeal of the IGO's dismissal without prejudice. ECF No. 32-5 at 1 (Maryland Judiciary Case Search results showing no administrative appeal cases filed by an Eddie Carter between March 1, 2019, and February 21, 2024).

For purposes of equitable tolling, Defendants give Carter "the benefit of the doubt" and use the May 11, 2020 date to determine when his claim accrued. ECF No. 32-1 at 16-17. This is the date that Carter's counsel was sent a copy of the IID report. ECF No. 32-3 at 2 ¶ 7. Considering May 11, 2020 as the claim accrual date due to equitable tolling, Carter's three-year statute of limitations expired three years later, and his complaint

8

needed to be filed no later than May 10, 2023. *Id.* at 17. Yet, Carter's complaint in this case was filed over nine months later, on February 21, 2024. *See* ECF No. 1.

Further, although the three-year statute of limitations may be otherwise tolled for equitable reasons, this is only in "those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutcherson*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting his or her rights; rather, the plaintiff must establish that he or she has been prevented from asserting those rights. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974).

Carter asserts in his amended limited response that he was placed on disciplinary segregation immediately following the March 1, 2019 incident and then transferred to another facility. ECF No. 43-1 at 2. He states that while he was on disciplinary segregation, Defendants and "their coworkers" limited his "access to the courts by limiting paper, pen, typewriter, phone, etc." *Id.* Carter contends he could not file his Section 1983 complaint in 2019 due to the "interference" of the Defendants. *Id.* Further, he contends that in 2020, because of the COVID-19 pandemic, no incarcerated individual "was able to do anything" and movement restrictions continued until 2022, and that it was not until the end of 2023 that Defendants "relaxed their interference" with his court access and he was able to contact a lawyer who filed his complaint in February 2024. *Id.* at 3-4.

Defendants reply that Carter's counsel, Bert Kapinus, who originally filed this action, both requested a copy of the IID investigation, prior to December 30, 2019, when the investigation was still pending, and then again after the investigation was concluded

9

on December 30, 2019, and he was provided the redacted IID report on May 11, 2020. ECF Nos. 41 at 6; 32-3 at 2, ¶ 7. Yet neither Carter nor his former counsel requested to reopen Carter's administrative remedies case with the IGO, or judicially appeal the IGO's dismissal without prejudice. *Id.*; ECF 32-5 at 1 (Maryland Judiciary Case Search results showing no administrative appeal).

The Court finds that Carter's allegations in response to the motion do not warrant further equitable tolling of the statute of limitations. Carter had ample time to file his complaint with the Court and his reasons for not doing so are not persuasive. In order to be timely, Carter had to file suit by May 10, 2023, which is well before the February 21, 2024 date when the complaint was filed. Further, as Carter's action is time barred, the Court need not consider Defendants' laches argument. Carter's federal claims will be dismissed as to all Defendants.

### B. State Law Claims

In addition to his federal constitutional and statutory claims, Carter asserts state law claims. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331(a)(1) over "'civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). The Court does not have original jurisdiction over Carter's state law claims; the Court is only authorized to resolve those claims pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a), which provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see also ESAB Group, Inc.*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."). "[U]nder the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001). "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).

In the absence of viable claims that come within federal question jurisdiction, the Court exercises its discretion and declines to exercise supplemental jurisdiction over Carter's state law claims. Carter's state law claims will be dismissed as to all Defendants.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is granted as to federal claims. Carter's federal claims will be dismissed as to all Defendants and his state law claims will be dismissed without prejudice as to all Defendants. A separate Order follows.

**8/11/25**                                             */s/*

Date                                                    Adam B. Abelson
                                                       United States District Judge